Per Curiam.
 

 In this case the plaintiff, or the person under whom he claims, obtained a grant upon a removed warrant, for which the defendant had previously obtained one; and to avoid the grant of
 
 *319
 
 the defendant, six grounds have been taken as stated above. As several of these positions involve principles of considerable consequence to the peace of society, it may be material to consider the common law first, and see what light can be collected from thence.
 

 First. Premising however, that the concession of the plaintiff's counsel in relation to contracts, seems to be correct in general. The grant of a state stands in the same situation, as the contracts of individuals by deed, as to principle. It is not material to enquire minutely, how far, and for what causes, the state can avoid their grants upon the principle of deception. Even in England, where the acknowledged rights of royalty confer privileges unknown to the ordinary rules of law between man and man, the better opinion seems to be, that the king cannot avoid his own grants for every mistake or deception. In this respect the law seems to be correctly laid down in Kemps case, 12 Mod. 78, that if the king is not deceived by the false suggestions of the grantee, (which is always stated by way of recital) but only mistaken by his own surmises as to fact or inferences of law, the grant shall be good, if not contrary to the rules of law
 
 ;
 
 and in such cases he cannot avoid his grant. Now, neither of the grants before us contain any recital of the suggestions or information of the parties. The grants specify the receipt of the consideration, but this is held to be unimportant ; nor is the point intended to be decided, that the state cannot repeal or avoid a grant itself, where an officer has issued one without having received a consideration. If, however, the law respecting the king’s grants, were to decide the case, it would seem that the grant could not be avoided by the state.—Conformably to the position conceded by the plaintiff's counsel, we must judge of this case as if it were the deed of an individual, with the exception of this principle, which is believed to be incontrovertible, that the state is never supposed to have committed a fraud. Frauds may be committed on them, but not
 
 vice
 
 versa. In the case of two individuals, could the plaintiff, under the circumstances of his case, which he has disclosed to the court, avoid Cocke’s deed or
 
 *320
 
 grant, by the principles of the common law? It occurs strongly that he could not. Previously to the statute of the 27 Elz. c. 4, a deed could not be avoided for fraud, unless the person seeking the avoidance, had a claim to be prejudiced at the time the fraud was committed. 3 Co. 83. Cro. El. 445.—The doctrine of Ld. Mansfield, in Cowp. 434, that the common law covered all the cases embraced by the statutes of 15 Elz. c. 5, and 27 Elz. c. 4, is repudiated, so far as to enable subsequent purchasers of real estates, under particular circumstances, to avoid prior conveyances. By the common law, I take it to be a clear principle, that a subsequent purchaser of a real estate, for a valuable consideration, could not avoid a previous voluntary or fradulent conveyance. The ancient law did not consider a man who purchased with his eyes open, after a former conveyance, (no matter for what cause it was made) as injured, therefore, afforded no remedy.—In Baily vs. Merrill, 3 Bulst. 95, Croke, J. lays down the rule to be, “ that fraud without damage, or damage without fraud, gives no cause of action, but where these two do concur, there an action lieth." After making the statute of the 27th Eliz. c. 4, in order the more effectually to suppress fraud, the courts gave the statute an operation which the common law did not possess, to wit, that a person purchasing and taking a conveyance, after a voluntary and fradulent one, might avoid it. This statute how ever operated upon the
 
 intent of the person conveying;
 
 if he were innocent, the statute had no operation—the case stood as it was at the common law.
 
 (a)
 

 It appears then, that the statute of 27 Elz. c. 4, cannot be made to bear upon the plaintiff's case, for it will not be asserted, that the state, when they conveyed the land to Cocke, intended to defraud the plaintiff, when his claim was not thought of, at the place where he now claims; nor in fact, can it be legally said, that they intended to defraud any person
 
 ,
 
 itself, by deception or misrepresentation,
 
 m
 
 ight have been defrauded by others, but that induces a different consideration. From this view, it results, that we must judge of the plaintiff's case, without the aid of the 27th of Elz. c. 4, and that as the
 
 *321
 
 defendant had previously obtained his grant, the plaintiff who obtained one afterwards, without a previous entry, cannot avoid it for fraud, mis-representation or deception in the grantee, because that deception did not operate to his prejudice, having then no right to be prejudiced.
 
 Res inter alias non nocet.
 

 We will now consider the case as it respects the land law of the state. There are three principle divisons of claims—
 

 First, county claims.
 

 Second, military.
 

 Third, John Armstrong's.
 

 In order to the institution of a claim under the first division, it were necessary that a person should pay the consideration before an entry. It therefore follows, that an entry is of itself evidence of the payment of consideration after a grant has issued. Being matter of record, no evidence can be received to contradict it. If in fact, no consideration were paid, the entry taker and his securities are liable for the money.
 

 The second kind of claims were founded upon meritorious services, of which the officers appointed by law were the judges, and after the issuing of grants, it never can be a question with the judiciary, whether services were performed or not ; the state, through the medium of their officers, were the competent judges of that, and their opinion should be conclusive on us.
 
 (a)
 

 The third kind of claims seems to admit of the same rules of law as the first. In either case the grant is evidence in controversies between individuals, that all previous requisites of the law in relation to it, had been complied with ; and this presumption is conclusive as to claims by entries or grants, originating afterwards.
 
 *
 

 The entries in John Armstrong’s office, are all extant ; but the grant of the defendant does not recite the entry upon which it was obtained. It acknowledges the receipt of
 
 l.10
 
 per hundred, and we
 
 *322
 
 have no legal means before us, as it respects the claim of the plaintiff, of knowing that the money was not received. If the plat annexed to the grant(which makes no essential part of it,)
 
 (a)
 
 should recite a Carter's warrant, which perhaps it does, and the grant should acknowledge the receipt of l.10 instead of
 
 l. 2
 
 per hundred, it would not avoid it ; the consideration being personal, cannot be enquired into.
 
 (b)
 

 How far the state itself may avoid a grant by
 
 sci. fa.
 
 for deception, we do not undertake to say ; either as to grantee himself, or persons claiming under him, with notice express or implied, from the annexation of the plat to the grant. But in all cases where the state has authorised the entering or granting of lands of any particular kind, or description, on the ground contended for, then we understand that the grant is good as respects claims set on foot afterwards notwithstanding irregularities that may have taken place in obtaining it.
 
 *
 
 In the words of the grant there is no conditition precedent. On its execution the state vested, and cannot be avoided or divested, for any condition subsequent, but by the person or state making the grant. Com. Dig. tit. condition O. 1. In these grants there are no conditions
 
 precedent;
 
 the state had therefore, for all that appears in the defendants grant, taken upon themselves the responsibility of seeing that the preliminary requisites of the law were compled with. If they had not, the state grants here, would contain recitals of the information of the grantees upon which they were made, as by the English law they must do, or the king takes a knowledge of the consideration on himself.
 
 *
 

 By the same law, a purchaser must look to the title he is buying, from its foundation; at least as far back as any statute of limitation(l)would run: sixty years in England. If he is purchasing an estate derived under the grant of the king, that grant would disclose, that it was made upon certain suggestions, on the truth of which the estate would always depend. The purchaser then, would know from the grant the consideration, the verity of which it would be incumbent on him to ascertain.(2)
 

 Apply the same principles to our grants, and they
 
 *323
 
 will be correct as to under or second purchasers, but never can otherwise.
 

 It is however, worthy of remark with respect to these recitals, that in England, they found it necessary to pass many statutes for the quiet of purchasers, who derived their claims under the crown.
 
 (2)
 

 The ideas of Mr. J. Yeates, of Pennsylvania, 4 Dall. 204-5, upon a similar occasion, are not inapplicable on this. When speaking of land forfeited
 
 to
 
 the government, he observes, “If the lands are forfeited in the eye of the law, though they have been fully paid for, the breach of the condition can only be taken advantage of by the commonwealth, in a method prescribed by law. Innumerable mischiefs, and endless confusion, would ensue from individuals taking upon themselves to judge when warrants and surveys (and grants too in this country) cease to have validity;” or whether any in the commencement, if issued by the state, might be added, "and making entries on such land at their will and pleasure. If the expressions of the law were not as particular as we find them, we should have no difficulty in pronouncing, that no persons should take advantage of their own wrong; and that it does not lie in the mouth of men like those we are speaking of, to say that warrants are dead; we will take and withhold the possession, and thereby entitle ourselves to reap benefits from an unlawful act.
 
 *
 

 The circumstance of the entry having been over Brown’s line can have no effect; the entry being valid at the time it was made. We cannot notice the date of the survey in this case, there being no law of North Carolina directing that it should be made a record, as there now is by the law of this state.
 

 The arguments of the defendants counsel respecting the parties to the suit and removals, seems to be correct. Demurrer allowed, and bill dismissed.
 

 (a)
 

 See Roberts on Fraud. Conveyances
 

 (a)
 

 Plow. 455, Wroth's case. 3 Mass. 379. 3 Call.495. Hardin 362. 4 Dall. 220. Taylor and Quarles vs Brown. S. C. U. S. 1812.
 

 *
 

 See 2 Bay 426, 464. 1 Hen. & Mun. 306. 2 Wash. 114, 115, 116. Hardin,
 
 13,
 
 75, 102. 1 Wash. 113. 1 Hay 358-9 Hardin. 362. Taylor & Quarles vs. Brown, S. C. U. S. 1812.
 

 (a)
 

 Polk'sles
 
 see vs. Hill & als. Fed. Ct. West T.
 

 (b)
 

 6 Co. 6. 5 Co. 93. Jenk. 304 10 Co. 67. Freem. 332 Plow. 455.
 

 *
 

 See 3 Cr. 70, 71. 1 Hay 358-9.
 

 *
 

 Com. Dig. tit. grant G. 9. Jenk. 303 pl. 77. 17 Vin. Ab. 104 to 114. Stat. 6 H. 8 c. 15. Dyer's R. 252, pl. 26. 12 Mod. 77. 3 Cr. 70. (1)Sugd. 239 et Seq. (2) Binney Rep. 455.
 

 (2)
 

 See Stat. 4&5,P.& M. c. 1, 34 and 35, H. 8, c. 21. 1 E. 6, c. 8. 18 Eliz. c. 2, and others on the same subject.
 

 *
 

 The principle of public utility has a strong bearing on the question, whether it were competent to individuals, in lucro captando, to institute claims upon the errors or frauds of others ; in this country it would open a door for endless contention and litigation. It is said in Kaim’s Pr. Eq. 405, “ that whenever public utility is at variance with justice, a court of equity ought not to enforce the latter, nor suffer it to be enforced by a court of common law. Vide p. 404,
 
 5, 6.
 
 373, 376, of the same book.